CONFEDERATED TRIBES OF the COL-VILLE INDIAN RESERVATION, Plaintiff,

v.

STATE OF WASHINGTON et al., Defendants.

No. C-75-146.

United States District Court, E. D. Washington.

April 14, 1976.

Barry D. Ernstoff, Mason D. Morisset, Ziontz, Pirtle, Morisset, Ernstoff & Chestnut, Seattle, Wash., for plaintiff.

Slade Gorton, Atty. Gen., Dennis D. Reynolds, Asst. Atty. Gen., State of Washington, Olympia, Wash., for defendants.

## MEMORANDUM AND ORDER

NEILL, Chief Judge.

Plaintiff is an Indian tribal organization situated on the Colville Indian Reservation in Eastern Washington. President Grant established the reservation by Presidential Executive Order on July 2, 1872, 1 C. Kappler, Indian Affairs, Laws and Treaties 916 (2d ed. 1904), and it presently encompasses approximately 1.3 million acres of land. The Colville Tribes are governed by a fourteen-person business council pursuant to a constitution and by-laws approved by the Secretary of the Interior on December 26, 1938.

The Colvilles have engaged in a program to develop sport fishing and tourism on their reservation, particularly in an area known as Twin Lakes. The tribes purchased a resort on Twin Lakes and, with the help of the United States Fish and Wildlife Service, they have kept the lakes amply stocked with fish. The tribes maintain a program for enforcement of tribal fishing ordinances, regulations and business council resolutions, and require persons using the lakes to purchase tribal fishing licenses. State licenses are not required by the tribes for fishing on their reservation.

On Saturday, June 21, 1975, four State of Washington game enforcement officers entered the Colville Reservation and began checking non-Indians fishing on Twin Lakes for state fishing licenses. Most of the persons checked were found to be in possession of both tribal and state licenses, but four citations were issued to non-Indians fishing without state licenses. A peaceful confrontation between tribal police and the state game enforcement officers ensued, the tribal police contesting the State's authority to issue citations on the reservation. The state officers departed without further incident.

Plaintiff subsequently filed suit in the United States District Court for the Western District of Washington, seeking a declaratory judgment that the State of Washington has no legal right to regulate Indian or non-Indian fishing on the Colville Reservation, and a permanent injunction against such regulatory activity. Additionally, plaintiff seeks damages in the amount of $100,000.00 for loss of revenue, destruction of good will and interference with tourism. Jurisdiction in the United States District Court is properly founded on 28 U.S.C. §§ 1362, 2201 and 2202.

On June 25, 1975 the United States District Court for the Western District of Washington entered a temporary restraining order prohibiting the State from regulation of fishing on the reservation. This order was extended on July 7, 1975 in an Order transferring the case from the Western District of Washington to this Court.

This Court then entered a preliminary injunction, Ferry County was dismissed as a defendant, and plaintiff's damage claim was severed for trial. A trial on the injunctive and declaratory claims ensued.

## I. *Plaintiff's Claims for Relief*

The central issue of the case is whether the State of Washington can legally enforce its game regulations against non-Indians fishing on the Colville Reservation by requiring them to purchase state fishing licenses and by issuing citations to those who do not. The Court concludes that such enforcement activity by the state is unconstitutional.

Relying on their preserved fishing rights and on the basic concept of tribal sovereignty, plaintiff tribes argue that they possess full sovereign authority to license, control and regulate the taking of fish from their trust waters, and that the State of Washington has been granted no such authority and is without jurisdiction to exercise its regulatory powers on the reservation. Further, plaintiff alleges state regulation of non-Indian fishing on the reservation will hamper proper management of the fisheries resource and impair the economic development of the reservation. The tribes conclude that state regulation of non-Indian fishing is repugnant to the Supremacy Clause and Indian Commerce Clause of the United States Constitution. The United States, as amicus curiae, has joined plaintiff tribes in asserting that the state has no jurisdiction to regulate fishing on the Colville Reservation.

Conversely, defendant State of Washington argues that, in the absence of express treaty provisions to the contrary, Indian tribes can regulate only Indian fishing; that state regulation of non-Indian fishing on the Colville Reservation does not interfere or conflict with tribal fishing or self-government; that plaintiff (tribes) does not possess the attributes of tribal sovereignty because the Colvilles are not treaty tribes; and that whatever sovereignty plaintiff possessed has been relinquished to the state by legislation. Therefore, the state con-

cludes that its general statutory grant of jurisdiction over the civil and criminal affairs on the Colville Reservation authorizes it to regulate non-Indian fishing on the reservation.

## II. *Analysis*

■ Plaintiff's arguments based on the concept of inherent tribal sovereignty, standing alone, have little relevance to the case at bench for it is well established that the sovereign rights of an Indian tribe can be abrogated by federal legislation. *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), *Lone Wolf v. Hitchcock,* 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903). As the Supreme Court stated in *McClanahan v. State Tax Commission of Arizona,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973):

> [T]he trend has been away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal pre-emption. . . . The modern cases thus tend to avoid reliance on platonic notions of Indian sovereignty and to look instead to the applicable treaties and statutes which define the limits of state power.

*Supra,* at 172, 93 S.Ct. at 1262, 36 L.Ed.2d at 135. Therefore, the Court must begin its inquiry with an examination of inherent tribal rights and must then assess the impact that subsequent legislation has had in diminishing tribal jurisdiction and transferring it to the state.

■ As a basic proposition it is clear that Indians traditionally enjoyed the exclusive right to hunt and fish on lands reserved to them, unless such rights were clearly relinquished by treaty. *Menominee Tribe v. United States,* 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); *Alaska Pacific Fisheries v. United States,* 248 U.S. 78, 39 S.Ct. 40, 63 L.Ed. 138 (1918); *Kimball v. Callahan,* 493 F.2d 564 (9th Cir. 1974) *cert. denied* 419 U.S. 1019, 95 S.Ct. 491, 42 L.Ed.2d 292 (1975); *United States v. State of Washington,* 384 F.Supp. 312 (W.D.Wash. 1974), *aff'd.* 520 F.2d 676 (9th Cir., 1975). This right is implied where not explicitly

mentioned in the agreement establishing a reservation, for such agreements are not grants of rights to the Indians, but rather a reservation of rights already possessed by them and not granted away. *United States v. Winans,* 198 U.S. 371, 25 S.Ct. 662, 49 L.Ed. 1089 (1905). As stated in United States Department of Interior, *Federal Indian Law* (1958) at 497:

> The right to hunt and fish was part of the larger rights possessed by the Indians in the lands used and occupied by them. Such right . . . remained in them unless granted away.

Further, this right is extant whether the reservation is created by executive order or established by treaty. *United States v. Walker River Irrigation District,* 104 F.2d 334 (9th Cir. 1939); *Quechan Tribe of Indians v. Rowe,* 350 F.Supp. 106 (S.D.Cal.1972) *aff'd in part, reversed in part* 531 F.2d 408 (9th Cir. 1976); *Federal Indian Law* at 614–616. *See also Spalding v. Chandler,* 160 U.S. 394, 403, 16 S.Ct. 360, 364, 40 L.Ed. 469, 472 (1896).

Balanced against plaintiff's inherent right to exclusive control of fishing on the Colville Reservation is the plenary power of the United States to abrogate such rights and to transfer jurisdiction over the control of reservation affairs to the states. *United States v. Mazurie, supra, Lone Wolf v. Hitchcock, supra.* Accordingly, Congress has given the states permission to assume general civil and criminal jurisdiction over the Indian reservations within their borders, Public Law 83–280, 67 Stat. 588 (1953) (hereinafter Public Law 280), and Washington has assumed such jurisdiction over the Colville Reservation. *See* R.C.W. 37.12.

■ However, this general grant of jurisdiction to the State of Washington is subject to the limitation that Indian fishing rights shall not be abridged by the state:

> Nothing in this section . . . shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or

the control, licensing, or regulation thereof.

18 U.S.C. § 1162(b).[1] The Indians' right to control fishing on their reservation is enforced by 18 U.S.C. § 1165, which makes it a crime for any person to take game from an Indian reservation "without lawful authority or permission". Public Law 280 does not affect the applicability of this enforcement provision. *United States v. Pollmann,* 364 F.Supp. 995, 1002 (D.Mont.1973).

Since plaintiff (tribes) has enacted a comprehensive program for the administration of tribal fisheries resources as authorized by the proviso of section 1162(b), any state infringement of the tribes' exercise of this regulatory power would violate the Supremacy Clause. *Antoine v. Washington,* 420 U.S. 194, 205, 95 S.Ct. 944, 950–951, 43 L.Ed.2d 129, 137 (1975), *Metlakatla Indians v. Egan,* 369 U.S. 45, 82 S.Ct. 552, 7 L.Ed.2d 562 (1962). Therefore, the central inquiry in the case is whether the proviso of section 1162(b) preempts the state's power to regulate fishing on the reservation or merely forbids state regulation which interferes with plaintiff's regulatory scheme.

The state's jurisdictional grant under Public Law 280 and the limitation on that grant contained in the proviso of 18 U.S.C. § 1162(b) create a situation of dual state-federal jurisdiction over the Colville Reservation. This is true even though the federal government has not directly exercised the regulatory power reserved by the proviso. This power may properly be delegated, especially where the beneficiary of the delegation is a quasi-sovereign Indian tribe. *United States v. Mazurie, supra* 419 U.S. at 556–559, 95 S.Ct. at 717–718, 42 L.Ed.2d at 716–718. Further, the exercise of such delegated powers has the same force and effect under the Supremacy Clause as if exercised by the federal government directly. *Id.*

Whenever dual jurisdiction exists between a state and the federal government, the state may regulate only to an extent and in a manner that is consistent with federal regulation. Therefore, where the federal regulatory scheme is not intended to be pervasive and all-inclusive, the state is free to regulate the same area in a manner that does not conflict or interfere with federal regulation. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973); *Huron Cement Co. v. Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960); *Allen-Bradley Local v. Board,* 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1942); *Maurer v. Hamilton,* 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940). But where federal regulation provides a comprehensive scheme in a given area, the state's power to regulate is preempted and the state is precluded from exercising its regulatory powers in any manner. *City of Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Warren Trading Post v. Arizona Tax Commission,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965); *Napier v. Atlantic Coast Line,* 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926).

In *Warren Trading Post v. Arizona Tax Commission, supra,* the Supreme Court invalidated Arizona's attempt to levy a sales tax against non-Indian traders doing business with the Indians on their reservation the Court holding that the federal government had undertaken such comprehensive regulation of trading on the reservation that there was no room for state regulation. 380 U.S. at 690, 85 S.Ct. at 1245, 14 L.Ed.2d at 168. Similarly, the Supreme Court has noted that Public Law 280 granted the State of Washington only "limited jurisdiction" over the Colville Reservation, *Antoine v. Washington, supra,* 420 U.S. at 204 n. 10, 95 S.Ct. at 950, 43 L.Ed.2d at 137, and that the proviso of section

1. A similar proviso contained in R.C.W. 37.12.-060 differs slightly in its wording by explicitly extending protection from state interference to hunting and fishing rights "afforded under . . . executive order . . . ." This difference is consistent with the Court's determination that the plaintiff tribes retained their hunting and fishing rights when the Colville Reservation was created.

1162(b) reserves to the Indians the power to regulate fishing on their reservations without limitation. *Menominee Tribe v. United States, supra* 391 U.S. at 411, 88 S.Ct. at 1710, 20 L.Ed.2d at 702. This construction is consistent with the comprehensive regulatory scheme that plaintiff has adopted to control and utilize the tribal fisheries resources. Applying the longstanding canon of construction "that the wording of treaties and statutes ratifying agreements with the indians is not to be construed to their prejudice", *Antoine v. Washington, supra* 420 U.S. at 199, 95 S.Ct. at 948, 43 L.Ed.2d at 134, the Court is constrained to conclude that the federal government has preempted state regulation of fishing on the Colville Reservation and has delegated its regulatory power to the plaintiff tribes, thereby prohibiting any state regulation of fishing on the reservation.[2]

However, it does not follow that plaintiffs are entitled to injunctive relief. "The prime prerequisite for injunctive relief is the threat of irreparable future harm." *Quechan Tribe of Indians v. Rowe,* 531 F.2d 408, 410 (9th Cir. 1976). In this case, as in *Quechan,* "there is no indication that the defendants . . . are threatening any future action in derogation of the [tribes'] rights, whatever they might be declared to be." *Id.*

WHEREFORE, the Court hereby declares that the State of Washington is without jurisdiction to regulate or control fishing by Indians or non-Indians on the Colville Reservation.

IT IS FURTHER ORDERED that plaintiff's prayer for injunctive relief is hereby DENIED.

---

2. Defendant correctly notes that in *United States v. Mazurie, supra,* the defendant, a non-Indian, had been licensed by both the tribe and the state to sell liquor on an Indian reservation. Defendant argues that this concurrent state-tribal licensing supports its position in the case at bench. However, defendant's reliance on this aspect of *Mazurie* is misplaced for two reasons. First, the legality of the dual licensing in *Mazurie* was not at issue and was not passed upon by the Court and, second, dual liquor licensing is required by federal law and, therefore, does not run afoul of the Supremacy Clause. *See* 18 U.S.C. § 1161.