591 F.2d 89
 CONFEDERATED TRIBES OF THE COLVILLE INDIAN RESERVATION,
Plaintiff-Appellee,
v.
STATE OF WASHINGTON, Carl Crouse, Individually and as
Director of the State of Washington Department of
Game, Defendant-Appellant.
 No. 76-3286.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 16, 1979.
 
 Dennis Reynolds, Asst. Atty. Gen. (argued), Olympia, Wash., for defendant-appellant.
 Mason Morisset (argued), of Ziontz, Pirtle, Morisset, Ernestoff & Chestnut, Seattle, Wash., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Washington.
 Before DUNIWAY and CHOY, Circuit Judges, and GRANT,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 The State of Washington appeals from a district court declaratory judgment that the State is without jurisdiction to regulate or control fishing by non-Indians on the Colville Indian Reservation. Appellees are the Confederated Tribes of the Colville Indian Reservation (the Tribes), a federally recognized tribal organization. We reverse.
 
 I. Statement of the Case
 
 2
 The Tribes and the United States Fish and Wild Life Service have sponsored a program to bolster sports fishing in reservation waters. The Fish and Wild Life Service stocks the lakes and tribal police regulate and control fishing activity. The State has contributed research and survey materials to the program.
 
 
 3
 Tribal regulations require that all persons fishing in reservation waters purchase a tribal fishing license. The State also requires a license for non-Indians fishing in reservation waters. Non-Indians are thus required to purchase two licenses.
 
 
 4
 In June, 1975, state officers entered reservation lands and issued four citations to non-Indians who possessed tribal but not state fishing licenses. Tribal police at the scene contested the authority of state officers to issue the citations. After issuing the citations, the state officers departed without further incident.
 
 
 5
 On June 25, 1975, the Tribes filed suit for injunctive[1] and declaratory relief. The district court held that the State regulation of fishing by non-Indians on the reservation had been preempted under the Supremacy Clause.[2] It observed that applicable federal law "create(s) a situation of dual state-federal jurisdiction over the Colville Reservation." 412 F.Supp. 651, 655 (E.D.Wash.1976). It then noted that Congress had delegated to the Tribes the right to regulate fishing on the reservation and "the exercise of such delegated powers has the same force and effect under the Supremacy Clause as if exercised by the federal government directly." Id. The court then stated the applicable law of preemption:Whenever dual jurisdiction exists between a state and the federal government, the state may regulate only to an extent and in a manner that is consistent with federal regulation. Therefore, where the federal regulatory scheme is not intended to be pervasive and all-inclusive, the state is free to regulate the same area in a manner that does not conflict or interfere with federal regulation. (Citations omitted.) But where federal regulations provides a comprehensive scheme in a given area, the state's power to regulate is preempted . . . .
 
 
 6
 Id. The district court concluded that because the Tribes had adopted a "comprehensive regulatory scheme . . . to control and utilize the tribal fisheries resources," state regulation was preempted. Id. at 656.[3]
 
 II. Manifestation of Preemptive Intent
 
 7
 We believe that the district court erred in concluding that tribal regulations preempted state regulation. The Supreme Court has indicated that the purpose of the Supremacy Clause is to invalidate those state laws that stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (footnotes omitted). Accord, Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). See Moe v. Salish & Kootenai Tribes, 425 U.S. 463, 483, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) (Quoting United States v. McGowan, 302 U.S. 535, 539, 58 S.Ct. 286, 288, 82 L.Ed. 410 (1938): "Enactments of the federal government passed to protect and guard its Indian wards only affect the operation . . . of such state laws as conflict with the federal enactments.") The Court has also noted that complementary state and federal programs are often intended and should not be lightly invalidated:
 
 
 8
 If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed.
 
 
 9
 New York Department of Social Services v. Dublino, 413 U.S. 405, 413, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973) (Quoting Schwartz v. Texas, 344 U.S. 199, 202-03, 73 S.Ct. 232, 97 L.Ed. 231 (1952)).
 
 
 10
 In the instant case the district court acknowledged that Congress envisioned a "situation of dual state-federal jurisdiction over the Colville Reservation," thereby indicating that Congress did not find that state jurisdiction would necessarily impede congressional objectives. 412 F.Supp. at 655. The district court found nonetheless that the tribal government's "comprehensive" regulatory scheme preempted state regulation.
 
 
 11
 In creating that system, however, the tribal government explicitly acknowledged that state jurisdiction would not constitute an obstacle to its efforts. Instead, the tribal government sought to aid enforcement of state law upon the reservation. For example, while the Tribal Hunting and Fishing Code specifies that where tribal law is more restrictive than state law the tribal law shall prevail, it does not specify that state law should never apply. See Tribal Hunting and Fishing Code § 3(c). Moreover, tribal enactments appear to place their imprimatur on state restrictions. Thus, resolutions of the tribal governing council provide that state definition of fishable waters shall limit tribal permits and that the tribal "(f)ishing season shall be identical to the Washington State Fishing Season." Resolutions 1971-516; 1973-158. The tribal governing board has also noted that tribal permits have been issued with the provisions that(t)he permittee must have appropriate State of Washington Hunting and Fishing license and must comply with State seasons, species and limitations as required by State law.
 
 
 12
 Resolution 1971-516. And the 1974 tribal permit reads in part:
 
 
 13
 IN ADDITION TO OUR PERMIT, THE STATE OF WASHINGTON REQUIRES STATE FISHING PERMITS TO FISH ON ALL LAKES, RIVERS AND STREAMS WITHIN THE EXTERIOR BOUNDARIES OF THE STATE OF WASHINGTON.
 
 
 14
 (Emphasis in original.)
 
 
 15
 This scheme of joint state-tribal regulation is perhaps most clearly articulated in a tribal resolution regarding hunting on the reservation, enacted pursuant to the same tribal constitutional provisions as are the fishing regulations. Though questioning the State's authority to regulate hunting on the reservation, the resolution requested that the State note on its hunting permits that Colville land was excluded, adding:
 
 
 16
 (T)he violation of the "Closed Area-Colville Indian Reservation" provision of the hunting permit (should) be handled in applicable state courts under state law.
 
 
 17
 Resolution 1971-365.
 
 
 18
 We conclude that the tribal council's own scheme permits the "situation of dual state-federal jurisdiction" that the district court found Congress had intended.[4]
 
 
 19
 The question we decide is a very narrow one. In its opening brief the State of Washington says:
 
 
 20
 The state has not disputed, although fishing rights are not mentioned in the 1872 Executive Order creating the Colville Reservation, that such rights are there by implication. The state historically has not attempted to regulate enrolled tribal members in the exercise of their fishing right on reservation and does not seek to exercise such power in this appeal.
 
 
 21
 The Colville Tribe, as present occupiers of the reservation can charge non-Indians for the privilege of going upon Indian lands to fish much like any normal private owner or tenant. Failure to pay or gain permission before access is trespass. 18 U.S.C. § 1165 codifies this normal trespass rule. Likewise, the tribe can apply more restrictive tribal regulations on non-Indians or even close all Indian lands within the reservation entirely, like (Sic ) any other private land occupier might do.
 
 
 22
 The foregoing concessions by the State are in line with our holding in Quechan Tribe of Indians v. Rowe, 531 F.2d 408, 410-11 (9th Cir. 1976).
 
 
 23
 The only authority claimed by the State is to impose upon non-Indians who wish to fish upon the reservation its licensing requirements and such of its statutes and regulations as impose restrictions equal to or more restrictive than those that the Tribes apply to both Indians and non-Indians who fish on the reservation. The State does not claim that it can authorize fishing or fishing practices by non-Indians on the reservation that are prohibited by the Tribes' regulations.
 
 
 24
 We need not decide now whether tribal efforts if made to preempt the State would be consistent with congressional intent,[5] or whether such efforts, if consistent with congressional goals, would preempt state regulation.[6] We hold only that we cannot find a "clear manifestation" of congressional or tribal intent to preempt state regulation, or that state regulation presents an obstacle to achieving federal policy.
 
 
 25
 REVERSED.
 
 DUNIWAY, Circuit Judge (dissenting):
 
 26
 I dissent. I would affirm, substantially for the reasons stated by Chief Judge Neill in the District Court, E.D.Wash.1976, 412 F.Supp. 651. I do not agree that "the tribal council's own scheme permits the 'situation of dual state-federal jurisdiction' that the district court found Congress had intended", as the majority states Supra, p. 92. Judge Neill pointed out that the "dual state-federal jurisdiction" does not extend to hunting and fishing, by virtue of 18 U.S.C. §§ 1162(b) and 1165. As he said, the grant of jurisdiction to Washington is subject to the limitation of § 1162(b). (412 F.Supp. at 654-55.)
 
 
 27
 Judge Neill also concluded that the Tribes have enacted "a comprehensive program for the administration of tribal fisheries resources" and this preempts the state's power to regulate (Id. at 655). I agree. The cases do not require that the tribal regulation must contain language expressly preempting, but even if they did, the Tribes' resolutions contain language that makes their intent to preempt clear.
 
 
 28
 The evidence that the majority cites in support of its conclusion that there has been no preemption seems to me to negate rather than to support the majority's conclusion.
 
 
 29
 The majority first refers to § 3(c) of the Tribes' "Ordinance Governing hunting and fishing within the boundaries of the Colville Reservation." Section 3 reads as follows:
 
 
 30
 Section 3. Jurisdiction.
 
 
 31
 (a) This code shall be applicable to all persons and lands within the boundaries of the Colville Reservation.
 
 
 32
 (b) Special regulations may be promulgated from time to time establishing special areas, seasons, gear and limits applicable to members of the Colville Tribes and members of reciprocating tribes. Except where otherwise provided, these regulations shall apply to all such persons as well as nonmembers of the Colville Tribes.
 
 
 33
 (c) No act prohibited by this code or by any other tribal ordinance may be committed, even though such act would be lawful under the law of the State of Washington. Brief of Plaintiffs-Appellees, App. 2, p. 2.
 
 
 34
 I submit that the foregoing language points to preemption, not away from it.
 
 
 35
 The next reference is to resolution 1971-516. This was adopted before the Tribal Ordinance, which became effective April 13, 1972, and so is of little weight in construing it.
 
 Next is resolution 1973-158, which says:
 
 36
 Fishing Season shall be identical to the Washington State fishing season. Id., App. 3, p. 16.
 
 
 37
 I suggest that this is merely a convenient shorthand definition, making it part of tribal law.
 
 
 38
 Next is the 1974 tribal permit. This is the only bit of evidence that I find possibly persuasive. Yet it can equally be said to be merely a warning as to what the state says that it requires, rather than a recognition that the state is entitled to require it.
 
 
 39
 Next is resolution 1971-365 quoted at 92, Supra. This, too, precedes the Ordinance, and it also states:
 
 
 40
 WHEREAS, the management of game within the Colville Indian Reservation is under the exclusive jurisdiction and control of the Colville Tribes; and
 
 
 41
 WHEREAS, the State of Washington issues annual hunting permits for game within the State of Washington, including the Colville Indian Reservation; and
 
 
 42
 WHEREAS, the State of Washington is without statutory authority to issue hunting permits covering the Colville Reservation area;
 
 
 43
 IT IS, THEREFORE, RESOLVED, that we, the Colville Business Council, . . . do hereby request the State of Washington to exclude the Colville Indian Reservation from future hunting permits and to properly notify the public accordingly; and
 
 
 44
 BE IT FURTHER RESOLVED, that the State Game Commission be requested, in the preparation of their hunting maps, to identify the Colville Indian Reservation in green as a "Closed Area"; and
 
 
 45
 FURTHER RESOLVED, that the violation of the "Closed Area Colville Indian Reservation" provision of the hunting permit be handled in applicable state courts under state law.
 
 
 46
 Brief, App. 3, p. 8.
 
 
 47
 This is hardly recognition of dual regulation within the reservation. I note, too, that in Resolution 1971-625, the tribe declines to honor state issued beaver trapping permits.
 
 
 48
 In short, I am convinced that hunting and fishing on Indian reservations, being historically the very basis of Indian survival, have always been within the power of the tribes to control and regulate, that Congress has expressly preserved that power in 18 U.S.C. § 1162(b) and provided a Federal means of enforcing it in § 1165, that the tribe has fully exercised that power, and that this preempts the power of Washington to regulate hunting and fishing on the reservation. See also, Quechon Tribe of Indians v. Rowe, 9 Cir., 1976, 531 F.2d 408; Mescalero Apache Tribe v. State of New Mexico, D.N.M. 1978, No. 77-395-M Civil.
 
 
 49
 United States v. Sanford, 9 Cir., 1976, 547 F.2d 1085, is not contrary to the views just stated. There, we held that Montana's game laws did apply to non-Indians hunting on the Crow Reservation. However, it does not appear that a comprehensive regulation of hunting on the Reservation had been adopted by the Crow Tribe as the Colville Tribes have done. See also, Eastern Band of Cherokee Indians v. North Carolina Wildlife Resources Commission, 4 Cir., 1978, 588 F.2d 75.
 
 
 50
 I would affirm.
 
 
 
 *
 The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation
 
 
 [1]
 The district court refused to grant injunctive relief because there was no showing of a threat of future irreparable harm from state actions. 412 F.Supp. at 656. This decision has not been appealed
 2 U.S.Const. art. VI, cl. 2.
 
 
 [3]
 Because we conclude Infra that the tribal council has not made a "clear manifestation" of intent to preempt or that state regulation constitutes an obstacle to accomplishing federal purposes, we need not consider if "the exercise of such delegated powers has the same force and effect under the Supremacy Clause as if exercised by the federal government directly." 412 F.Supp. at 655
 
 
 [4]
 On May 9, 1972, Judge Albert Orr of the Colville Confederated Tribes wrote a letter to Robert Ford, a Wildlife Agent for the State of Washington, which read in part:
 Non members of the Colville Tribes desiring to hunt or fish on the Colville Reservation must comply with all applicable state laws, in addition to all ordinances of the Colville Tribes.
 (If) the subject is not a member . . . he does not have the priviledges (Sic ) of enrolled members. And so, at this time he is under the jurisdiction of the State.
 
 
 [5]
 The filing of the instant lawsuit may presage a change in tribal policy. But it would be inconsistent with the Supreme Court's teaching that "federal supremacy is not lightly to be presumed" in the absence of "a clear manifestation of intention to do so" for us to base preemption on a prediction of what attitude the filing of a lawsuit may suggest. See New York Dep't of Social Serv. v. Dublino, 413 U.S. 405, 413, 415, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973); Schwartz v. Texas, 344 U.S. 199, 202-03, 73 S.Ct. 232, 97 L.Ed. 231 (1952). The dissent argues that the Tribes' statements may be interpreted as calling for preemption. But given that, as noted Supra, these statements also suggest tribal acknowledgment of the "situation of dual state-federal jurisdiction" Congress intended, we do not believe that the dissent establishes "a clear manifestation of intention" to preempt. Accordingly, we cannot presume preemption
 
 
 [6]
 Compare Confederated Tribes of the Colville Indian Reservation v. Washington, 446 F.Supp. 1339, 1360-62 (E.D.Wash.1978) (three judge court; majority opinion), Cert. granted, --- U. S. ----, 99 S.Ct. 1210, 59 L.Ed.2d 459 (1979), with id. at 1374-77 (Kilkenny, C. J., concurring and dissenting)