## MORAN, Ex'r of COOPER *v.* NEW ORLEANS.

IN ERROR TO THE SUPREME COURT OF LOUISIANA.

Submitted April 15, 1884.—Decided November 3, 1884.

A municipal ordinance of the city of New Orleans, to establish the rate of license for professions, callings and other business, which assesses and directs to be collected from persons owning and running towboats to and from the Gulf of Mexico and the city of New Orleans, is a regulation of commerce among the States, and is an infringement of the provisions of Article I., section 8, paragraph 3, of the Constitution of the United States.

This was an action to recover a license tax.

The city of New Orleans was authorized by a law of the State (Acts Extra Session, 1870, p. 37, § 12), for the purposes of the act, "to levy, impose and collect a license upon all persons pursuing any trade, profession or calling, and to provide for its collection; and said license shall not be construed to be a tax on property."

The same act, § 21, provides that "all licenses imposed by the city, not paid on the 31st day of July, shall be seizable, after thirty days' publication in the official journal," in certain courts of record in the city; "and upon the prayer of the city, through its proper representatives, any court of competent jurisdiction shall enjoin the said person or persons so liable to pay a license tax, and who shall refuse or neglect to pay the same, from continuing to carry on such business or profession until he shall have paid the same and all costs and charges for the recovery and enforcement of the claim therefor."

The council of the city of New Orleans passed an ordinance "to establish the rate of licenses for professions, callings and

other business for the year 1880," which assessed and directed to be collected the sums specially set forth, among others—

".Sec. 39. Every member of a firm or company, every agency, person, or corporation, owning and running towboats to and from the Gulf of Mexico, five hundred dollars.

" Every member of a firm or company, every agent, person or corporation, owning and running job-boats within the corporate limits, fifty dollars."

Joseph Cooper was the owner of two steam propellers, each measuring over 100 tons, duly enrolled and licensed at the port of New Orleans, under the laws of the United States, to be employed in the coasting trade, and employed them as towboats in taking vessels from the sea up the river to New Orleans and from that port to the sea.

The city of New Orleans brought its action against him in the Third District Court for the Parish of Orleans to recover the license tax under the ordinance, and obtained a judgment in its favor, which, on appeal, was affirmed by the Supreme Court of the State. The writ of error in this case was sued out by Cooper to reverse that judgment. After entry of the suit here Cooper died, and the plaintiff in error, as his widow in community and tutrix of his minor heirs, was admitted to prosecute it.

*Mr. J. R. Beckwith* for plaintiff in error.

*Mr. S. P. Blanc,* and *Mr. C. F. Buck* for defendant in error.—This writ of error brings before this court, for review, only the question—whether the imposition of a license tax on the calling, trade or occupation of running and operating towboats within municipal limits, and to the Gulf of Mexico, is a restraint or regulation imposed on commerce, and as such, violative of the laws and Constitution of the United States.— I. The license tax sued for is not a regulation of commerce and as such inhibited by the Constitution. Steamboats, ships, ferryboats, etc., are liable to taxation, as property, at their home ports. *St. Joseph* v. *Saville,* 39 Missouri, 460; *Minturn* v. *Hays,* 2 Cal. 590; *New Albany* v. *Meekin,* 3 Ind. 481;

*Morgan* v. *Parham*, 16 Wall. 471; *Wilkey* v. *Pekin*, 19 Ill. 160; *Hays* v. *The Pacific Mail Steamship Co.*, 17 How. 596; *Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224; *People* v. *Commissioners of Taxes*, 48 Barb. 157; *Battle* v. *Mobile*, 9 Ala. 234; *Perry* v. *Torrence*, 8 Ohio, 521. A State tax which remotely affects the efficient exercise of a Federal power is not for that reason alone prohibited. *Railroad Co.* v. *Perriston*, 18 Wall. 5. So a State tax on telegraph companies is valid. *Western Union Telegraph Co.* v. *Richmond*, 26 Gratt. 1. See also *License Cases*, 5 How. 504; *Wallcott* v. *People*, 17 Mich. 68; *State Freight Tax*, 15 Wall. 232; *Nathan* v. *Louisiana*, 8 How. 73; 8 Wall. 123, 148; *Osborne* v. *Mobile*, 16 Wall. 479.—II. The enrollment or licensing a vessel confers upon it no immunity from the valid laws of a State. *Baker* v. *Wise*, 16 Gratt. 139; *Smith* v. *Maryland*, 18 How. 71; *Newport* v. *Taylor*, 16 B. Mon. 699; *Conway* v. *Taylor*, 1 Black, 603. The Federal license is authority to use the vessel, but confers no exemption from State taxation. A State may even prohibit a business which is taxed by Congress. *Pervear* v. *Commonwealth*, 5 Wall. 475.

Mr. Justice Matthews delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The defence relied on at the trial and overruled was that the ordinance imposing the license tax was a regulation of commerce among the States, and therefore contrary to Art. I. § 8, par. 3 of the Constitution of the United States and void.

Whether the Supreme Court of Louisiana erred in overruling that defence is the single question presented for our consideration.

In the case of *Sinnot* v. *Davenport*, 22 How. 227, it was decided that a law of Alabama requiring owners of steamboats navigating the waters of the State, before such boat shall leave the port of Mobile, to file a statement in writing in the office of the probate judge of the county, setting forth the name of the vessel, the name, place of residence, and the interest of each owner in the vessel, under a penalty for non-compliance, as applied to a vessel which had taken out a license and was

duly enrolled under the act of Congress for carrying on the coasting trade and plied between New Orleans and the cities of Montgomery and Wetumpka, in Alabama, was in conflict with the act of Congress, and was therefore unconstitutional and void.

. Mr. Justice Nelson, delivering the opinion of the court said:
"The whole commercial marine of the country is placed by the Constitution under the regulation of Congress, and all laws passed by that body, in the regulation of navigation and trade, whether foreign or coastwise, is therefore but the exercise of an undisputed power. When, therefore, an act of the legislature of a State prescribes a regulation of the subject repugnant to and inconsistent with the regulation of Congress, the State law must give way; and this, without regard to the source of power whence the State legislature derived its enactment." (Page 243.)

And, repeating what was said in *Gibbons* v. *Ogden*, 9 Wheat. 1, on pages 210–214, as to the force and effect of the act of Congress providing for the enrollment and license of vessels engaged in the coasting trade, and of the license itself when issued, Mr. Justice Nelson said:

"These are the guards and restraints, and the only guards and restraints, which Congress has seen fit to annex to the privileges of ships and vessels engaged in the coasting trade, and upon a compliance with which, as we have seen, as full and complete authority is conferred by the license to carry on the trade as Congress is capable of conferring."

The act of the Legislature of Alabama in that case was declared void on the single and distinct ground that it imposed another and an additional condition to the privilege of carrying on this trade within her waters.

Immediately following that case, argued and decided at the same time, was that of *Foster* v. *Davenport*, 22 How. 244. It differed from the former in this respect only, that the vessel seized for non-compliance with the law of Alabama was engaged in lightering goods from and to vessels anchored in the lower bay of Mobile and the wharves of the city, and in towing vessels anchored there to and from the city, and, in some

instances, towing the same beyond the outer bar of the bay and into the Gulf to the distance of several miles, but was duly enrolled and licensed to carry on the coasting trade while engaged in this business. Mr. Justice Nelson, delivering the opinion of the court, said:

"It is quite apparent, from the facts admitted in the case, that the steamboat was employed in aid of vessels engaged in the foreign or coastwise trade and commerce of the United States, either in the delivery of their cargoes, or in towing the vessels themselves to the port of Mobile. The character of the navigation and business in which it was employed cannot be distinguished from that in which the vessels it towed or unloaded were engaged. The lightering or towing was but the prolongation of the voyage of the vessels assisted to their port of destination."

The present case would seem to fall directly within the rule of these decisions, unless the fact that the ordinance of the city of New Orleans is the exercise of the taxing power of the State, can be supposed to make a material difference.

But since the case of *Brown* v. *Maryland*, 12 Wheat. 419, it has been repeatedly decided by this court, that when a law of a State imposes a tax, under such circumstances and with such effect as to constitute it a regulation of commerce, either foreign or inter-state, it is void on that account. *Telegraph Co.* v. *Texas*, 105 U. S. 460, and cases there cited. In the *State Freight Tax Cases*, 15 Wall. 232–276, it was said that it could not make any difference that the legislative purpose was to raise money for the support of the State government, and not to regulate transportation; that it was not the purpose of the law, but its effect, which was to be considered. The fundamental proposition on the subject was expressed by Mr. Justice Miller, delivering the opinion of the court in *Crandall* v. *Nevada*, 6 Wall. 35–45, in this comprehensive language: "The question of the taxing power of the States, as its exercise has affected the functions of the Federal Government, has been repeatedly considered by this court, and the right of the States in this mode to impede or embarrass the constitutional

operations of that government, or the rights which its citizens hold under it, has been uniformly denied."

Otherwise unrestrained by the authority of the Federal Constitution, the taxing power of the States extends to and embraces the persons, property and pursuits of their people; although it is not always easy, in particular cases, to draw the line which separates the two jurisdictions; as may be seen by comparing the cases of *The State Freight Tax*, 15 Wall. 232, and of the *State Tax on Railway Gross Receipts*, 15 Wall. 284, and as was said in *Osborne* v. *Mobile*, 16 Wall. 479.

And it is undoubtedly true, as it has often been judicially declared, that vessels engaged in foreign or inter-state commerce, and duly enrolled and licensed under the acts of Congress, may be taxed by State authority as property; provided, the tax be not a tonnage duty, is levied only at the port of registry, and is valued as other property in the State, without unfavorable discrimination on account of its employment. *Transportation Co.* v. *Wheeling*, 99 U. S. 273; *Morgan* v. *Parham*, 16 Wall. 471; *Hays* v. *Pacific Mail Steamship Co.*, 17 Howard, 596; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365.

But the license fee in the present case is not a tax upon the boats as property, according to any valuation. The very law authorizing its imposition declares that it shall not be construed to be a tax on property.

It is said, however, to be a tax on an occupation, and for that reason not a regulation of commerce. If it were a tax upon the income derived from the business, it might be justified by the principle of the decision in the case of the *State Tax on Railway Gross Receipts*, 15 Wall. 284, which shows the distinction between a tax on transportation and a tax upon its fruits, realized and reduced to possession, so as to have become part of the general capital and property of the tax-payer.

But here it is not a tax on the profits and income after they have been realized from the business. It is a charge explicitly made as the price of the privilege of navigating the Mississippi River between New Orleans and the Gulf, in the coastwise trade; as the condition on which the State of Louisiana con-

sents that the boats of the plaintiff in error may be employed by him according to the terms of the license granted under the authority of Congress. The sole occupation sought to be subjected to the tax is that of using and enjoying the license of the United States to employ these particular vessels in the coasting trade; and the State thus seeks to burden with an exaction, fixed at its own pleasure, the very right to which the plaintiff in error is entitled under, and which he derives from, the Constitution and laws of the United States. The Louisiana statute declares expressly that if he refuses or neglects to pay the license tax imposed upon him, for using his boats in this way, he shall not be permitted to act under, and avail himself of the license granted by the United States, but may be enjoined from so doing by judicial process. The conflict between the two authorities is direct and express. What the one declares may be done without the tax, the other declares shall not be done except upon payment of the tax. In such an opposition, the only question is, which is the superior authority; and reduced to that, it furnishes its own answer.

*The judgment of the Supreme Court of Louisiana is accordingly reversed, and the cause remanded, with directions to render a judgment reversing that of the Third District Court for the Parish of Orleans, and directing that court to render a judgment dismissing the petition of the city of New Orleans.*

By stipulation of counsel on file, the same judgment is to be entered in the case of *E. N. Yorke* v. *The City of New Orleans*, No. 34, and *The Eclipse Towboat Company* v. *The City of New Orleans*, No. 35.