laCANNELLA, Judge.
Defendant/taxing authority, the St. Charles Parish School Board (St. Charles), appeals from the summary judgment granted by the trial court in favor of Plaintiffs/taxpayers, Archer Daniels Midland Company, ADM/Growmark River Systems, Inc. and Tulane Fleeting (Taxpayers), ordering St. Charles to refund the taxes paid by the Taxpayers under protest plus interest. For the reasons which follow, we affirm.
Taxpayers operate a fleet of tugboats in St. Charles Parish. The tugboats are used when river barges, loaded with grain which originates in the northern and midwestern states, arrive by means of multi-barge tows in St. Charles Parish. When a tow of barges arrives in St. Charles Parish, Tax *585 payers use their tugboats to break up the tow and shift the barges to a fleeting area along the Mississippi River for safekeeping until the barges are ready to be unloaded. When a barge is ready to be unloaded, Taxpayers’ tugboats shift the barge from the fleeting area to the unloading area. The grain is then unloaded either directly onto an oceanjgoing4 vessel or into a grain elevator to wait for an ocean-going vessel. The tugboats then shift the barges back to the fleeting area until they are picked up for transport back up river.
In this case, St. Charles exempts from taxation the purchase of fuel used by vessels “operating exclusively in foreign or interstate coastwise commerce.” [1] Generally, vessels are considered as engaged in foreign or interstate coastwise commerce, if the activities in which they are involved facilitate the transportation of cargo that is moving in foreign or interstate commerce. All of the fuel at issue in this dispute was purchased by Taxpayers during the taxable period,[2] delivered to the Taxpayers’ tugboats and used to operate the tugboats while performing the fleeting and shifting services described above. It is not disputed that Taxpayers’ tugboats do not leave St. Charles Parish. Also, the affidavits, depositions and information from the hearing on the motion for summary judgment indicate, without contradiction, that all of the grain unloaded from the barges originates at points outside of the State of Louisiana and is eventually shipped to points outside of the State of Louisiana. However, St. Charles considers it critical that its factual assertions include that some of the grain does not leave the north consigned to a specific destination outside of Louisiana. Rather, the grain leaves the north consigned to St. Charles Parish and its out of state destination is determined after the grain reaches St. Charles Parish. But in the hearing on the |Bmotion for summary judgment, it was conceded by St. Charles that all of the grain ultimately leaves St. Charles Parish.
La. R.S. 47:305.1(B), under which the exemption from taxes is claimed, provides in pertinent part:
The taxes imposed by R.S. 47:302 and R.S. 47:321 shall not apply to materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coast-wise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof;
St. Charles refuses to recognize Taxpayers exemption from sales and use taxes for the fuel used by its tugboats in the fleeting and shifting maneuvers. Therefore, Taxpayers paid the taxes under protest. Taxpayers, thereafter, filed this lawsuit to recover the sales and use taxes which they paid under protest.
Taxpayers filed a Motion for Summary Judgment arguing that the affidavits, stipulations and depositions established that there are no material facts at issue and that they were entitled to judgment as a matter of law. St. Charles argues that there are material facts at issue precluding summary judgment and that the tax ex *586 emption should be narrowly construed against the taxpayers.
The trial court, relying on the case of Cooper Stevedoring Company, Inc. v. Secretary of Louisiana Dept. of Revenue and Taxation, 555 So.2d 32 (La.App. 1st Cir.1989), granted the summary judgment in favor of Taxpayers and ordered that the taxes paid under protest be reimbursed with interest as provided by law. It is from this judgment that St. Charles appeals.
On appeal St. Charles argues that there are issues of fact, at issue that should have precluded summary judgment. Further, St. Charles argues that |fiwhere, as here, the tugboats do not leave St. Charles Parish, they do not come within the exemption.
Taxpayers argue, to the contrary, that there are no material facts at issue. They provided an affidavit by an executive officer who stated that all of the grain handled during the taxable period came from states outside of Louisiana and was shipped to foreign ports. St. Charles did not provide a contrary affidavit. The affidavit by the attorney for St. Charles did not dispute that the grain ultimately was shipped to foreign ports. Rather, it provided that in some cases the grain was initially consigned only to St. Charles Parish and that, after reaching St. Charles Parish, its foreign destination was determined. Further, Taxpayers argue that the fact that the tugboats do not leave St. Charles Parish is not determinative of the issue. Taxpayers do not dispute that their tugboats do not leave St. Charles Parish. Rather, Taxpayers argue that operations occurring only in St. Charles Parish can nevertheless come within the statutory tax exemption, where the activities in which they are engaged facilitate the transportation of cargo that is moving in foreign or interstate coastwise commerce. Taxpayers rely, as did the trial court in reaching its decision, on the case of Cooper Stevedoring Company Inc. v. Secretary of Louisiana Dept. of Revenue and Taxation, 555 So.2d 32 (La.App. 1st Cir.1989).
Cooper Stevedoring, very similar to the case before us, held that the taxpayer came within the exemption. The court in Cooper Stevedoring posed the issue as “whether vessels which operate completely within Louisiana waters providing steve-doring services to vessels engaged in either interstate or foreign commerce, are themselves considered to be engaged in interstate or foreign commerce so as to qualify for the sales tax exemption provided by La. R.S. |747:305.1(B).” The taxpayer in Cooper Stevedoring was engaged in stevedoring services, which consisted of operating barges on which were mounted cranes and conveyors which were used during the audit period to transfer grain, coal and other commodities from the barges the products came in on, which originated outside of Louisiana, to ships which delivered them to points outside of the United States, and the operation of crew boats which transported persons and supplies to and from said barges. The tax involved was a sales tax on fuel, parts, supplies, repairs and repair services of crane barges and the crew boats operated by the taxpayer. The taxpayer contended that it was exempt from the taxes under La. R.S. 47:305.1(B), the same statute involved in this case. The taxing authority argued that the exemption was not applicable because, although the taxpayer’s activities were performed for vessels engaged in interstate or foreign commerce, all of the taxpayer’s activities were performed within Louisiana. Since the taxpayer’s vessels never left Louisiana, the taxing authority argued that the taxpayer could not come within the language of the tax exemption as being “engaged in foreign or interstate coastwise commerce.”
The court disagreed with the argument of the taxing authority and found that the fuel, supplies and repairs purchased by the taxpayer for its vessels which were engaged in stevedoring activities and which facilitated interstate commerce came with *587 in the statutory exemption. In so holding, the court noted:
Historically, certain activities have been considered interstate or foreign commerce even when the activities are performed entirely within one state, if the activity is part of or facilitates the stream of interstate or foreign commerce. See, Dept. of Rev., Etc. v. Ass’n of Wash. Steve. Co., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978); Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, ftnt. 4 (1977), Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993 (1947), overruled on other grounds by Dept. of Rev., Etc. v. Ass’n of Wash. Steve. Co., supra; The Daniel Ball v. United States, 10 Wall. 557, 77 U.S. 557, 19 L.Ed. 999 (1871); Foster v.. Davenport, 22 How. 244, 63 U.S. 244, 16 L.Ed. 248 (1859); Higginbotham v. Public Belt Railroad Commission, 192 La. 525, 188 So. 395 (1938). It is clear from several of the above cited cases that the performance of stevedoring services for vessels engaged in interstate or foreign commerce is such an activity. In Dept. of Rev., Etc. v. Ass’n of Wash. Steve. Co., supra, the United States Supreme Court cited with approval the following language from Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68 (1937), which it overruled on other grounds.
“Transportation of a cargo by water is impossible or futile unless the thing to be transported is put aboard the ship and taken off at destination. A stevedore who in person or by servants does work so indispensable is as much an agency of commerce as shipowner or master.” ...
The business of loading and unloading ... [is] interstate or foreign commerce. Citation omitted 435 U.S. at 743, 98 S.Ct. at 1395
Thus, the court in Cooper Stevedoring held that activities of loading and unloading cargo which is in interstate commerce also constitutes interstate commerce, giving the taxpayer therein the benefit of the tax exemption even though his vessels did not travel outside of Louisiana.
St. Charles argues that we should not follow Cooper Stevedoring because that case dealt with stevedoring services, which are distinguishable from the services performed by Taxpayers herein. St. Charles argues that a distinction should be drawn between loading and unloading the barges, as was done in Cooper Stevedoring, and moving the barges in the waterway to the loading or unloading area.
| taxpayers argue that the Cooper Ste-vedoring case is not so limited. Rather, they argue that the Cooper Stevedoring case recognized the inclusion of activities as foreign or interstate coastwise commerce where those activities facilitated the foreign or interstate commerce. In this case, the barges with the grain, which are engaged in foreign or interstate coastwise commerce, must be moved through the waterways in St. Charles Parish to be unloaded so that the grain can then be reloaded onto other vessels that will take it further in foreign or interstate commerce. The activities in which Taxpayers’ vessels are involved in moving the barges to the unloading area and back out of the area are an integral part of or facilitate foreign or interstate coastwise commerce. Accordingly, they argue that the purchase of the fuel that they use comes within the tax exemption.
Taxpayers cite several other cases that relate to the issue before us. In Moran Towing v. New Orleans, 112 U.S. 69, 5 S.Ct. 38, 28 L.Ed. 653 (1884), the United State Supreme Court, in finding that tugboats, operating within New Orleans municipal limits and the Gulf of Mexico, were engaged in foreign or interstate coastwise commerce where they aided vessels which were engaged in foreign or coastwise trade and commerce, the court noted: “The character of the navigation and business in *588 which it was employed cannot be distinguished from that in which the vessels it towed or unloaded were engaged. The lightering or towing was but the prolongation of the voyage of the vessels assisted to their port of destination.”
In the case The Daniel Ball v. United States, 10 Wall. 557, 77 U.S. 557, 19 L.Ed. 999 (1870) the United States Supreme Court considered the question of whether a steamboat that traveled between two points within the state of Michigan was engaged |inin interstate commerce. The Court held that the steamship was engaged in interstate commerce because she was employed in transporting goods destined for other states or brought from other states, noting that “[t]he fact that several different and independent agencies are employed in transporting the commodity, some acting entirely in one state and some acting through two or more states does in no respect affect the character of the transaction.”
Taxpayers also direct us to a New York case, Moran Towing and Transportation Co., Inc. v. New York State Tax Commission, 72 N.Y.2d 166, 527 N.E.2d 763, 531 N.Y.S.2d 885 (1988). Moran Towing is very similar to the case before us. Moran Towing involved the question of whether tugboats, which never left New York waters, but provided towing services to larger vessels engaged in interstate commerce that were entering or leaving berths in the Port of New York, are exempt from state sales tax. The statutory exemption applied to vessels engaged in interstate or foreign commerce. The taxing authority argued that because the tugboats did not leave New York waters, they did not come within the exemption. The court held otherwise. In doing so, the court stated, “[i]f stevedores are engaged in interstate commerce when they provide service to a vessel on an interstate or international voyage, there can be no doubt that Moran’s tugboats are engaged in interstate commerce when they propel or direct the interstate vessels into and out of New York harbor.” The court also noted that the focus in deciding whether a vessel was engaged in interstate commerce was on what the vessel does, not where it does it. The taxing authority in Moran Towing, like St. Charles herein, argue that the state statute should be given a more narrow reading than the generally accepted meaning within the federal law. The court rejected that argument and found that in adopting the statute, the |ucommonly understood meaning of the phrase interstate commerce would be applicable.
Nevertheless, St. Charles argues that the instant case is distinguishable and Taxpayers should not benefit from the statutory exemption because the grain, when it leaves the northern states, is not consigned to a foreign destination but rather is consigned to St. Charles Parish and its foreign destination is not determined until after it arrives in St. Charles Parish. Thus, it becomes part of the mass of St. Charles Parish. We do not see this fact as requiring a different result from that reached in the above cited cases allowing the tax exemption.
The grain is a commodity involved in foreign or interstate coastwise commerce. It is being transported on the barges. Taxpayers’ tugboats facilitate the interstate commerce by bringing the barges with the grain to the unloading areas where the grain is unloaded either directly onto a foreign vessel or into the grain elevator where it awaits loading onto a foreign vessel. Taxpayers’s tugboats then move the barges out of the loading area back to the fleet where they gather for the return trip back north. Like the stevedor-ing activities in Cooper Stevedoring and the towing in Moran Towing, the activities performed by taxpayers are an integral part of the foreign or interstate coastwise commerce. As such, Taxpayer is engaged in foreign or interstate coastwise commerce.
While we are mindful of the rules of statutory construction concerning tax exemptions, that is, that the exemption is *589 to be strictly construed against the exemption, we do not find that it requires a contrary result. In Sales Tax Dist. No. 1 of Lafourche Parish v. Express Boat Co., Inc., 500 So.2d 364 (La.1987), our own Supreme Court, like the court in Moran Towing, in interpreting the meaning of the statutory exemption before us, held that it was presumed that the | ^Legislature when enacting the statute intended the words of the statute to be construed in accordance with any well-known meanings that have become inextricably intertwined with the terms. In doing so, the Court referred to and recognized the history of federal cases that have interpreted the words “foreign or interstate coastwise commerce.”
St. Charles argues that there were material issue of fact in issue that should have precluded summary judgment in this case. We disagree.
Taxpayers submitted, in support of their motion for summary judgment, an affidavit providing that all the grain herein, came from states outside of Louisiana and was sent to foreign destinations. St. Charles provided no counter affidavit to directly contradict Taxpayers’ facts. St. Charles submitted an affidavit that provided that the grain is not consigned to a foreign destination when it leaves the northern states but is consigned to St. Charles Parish. It is only after the grain reaches St. Charles Parish that it is consigned to its foreign destination. While St. Charles seems to allude to the idea that maybe all the grain does not reach a foreign destination, no affidavits, depositions are other evidence was admitted to support that assertion despite the fact that it had ample opportunity to obtain such evidence since the 1993 filing of this case. Further, in the hearing on the motion for summary judgment, counsel for St. Charles admitted that ultimately all the grain was exported. Also, St. Charles did not dispute the fact that the taxes at issue herein were on fuel used by the tugboats during these unloading and loading procedures. Based on the foregoing, we find no material facts at issue that preclude the summary judgment.
Moreover, we are bolstered in our interpretation by considering the purpose of the statute. The purpose of the exemption is to attract business to | ^Louisiana by making us competitive with the surrounding ports. The purpose of the exemption will be furthered if it is applied to these tugboats that assist the grain barges in reaching their unloading destination within St. Charles Parish. If the exemption is not applicable, considering the mobile nature of interstate commerce, business may be attracted elsewhere.
Accordingly, for the reasons set forth above, we affirm the summary judgment granted by the trial court in favor of the Taxpayers and against St. Charles, ordering a refund with interest of the taxes paid under protest. Costs of appeal are assessed against St. Charles.
AFFIRMED.

. Technically, the tax exemption is claimed under the St. Charles Parish School Board General Sales and Use Tax Ordinance, Section 3.01(6), which provides an exemption from the sales and use tax for "[t]he sale of materials and supplies to the owners and operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof....” In the case of Sales Tax Dist. No. 1 of Lafourche Parish v. Express Boat Co., Inc., 500 So.2d 364 (La.1987) the Supreme Court noted that these local ordinances were taken directly from La. R.S. 47:305.1 and thus were deemed to have incorporated interpretations of the state statute upon which they were based. Thus, there is no dispute among the parties herein that in deciding this case, we must look to the meaning of La. R.S. 47:305.1(B).

. The "taxable period” refers to the period from January 1, 1985 through December 31, 1993.